**UNITED STATES of America, Plaintiff,**

**v.**

**DURACELL INTERNATIONAL, INC., Dart Industries, Inc., Allied Products Corporation, the City of Waynesboro, Tennessee, and the State of Tennessee, Defendants.**

No. 80–1017.

United States District Court,
M. D. Tennessee,
Columbia Division.

March 16, 1981.

David O. Ledbetter, Dept. of Justice, Washington, D. C., for plaintiff.

William M. Barrick, Asst. Atty. Gen., Nashville, Tenn., for State of Tenn.

## MEMORANDUM

WISEMAN, District Judge.

The United States brought this action for the Administrator of the Environmental Protection Agency against defendants, three private companies, the City of Waynesboro, and the State of Tennessee, for injunctive relief and civil penalties for violation of Federal Water Pollution Laws [1] in the operation and use of the site known as the Old Waynesboro Dump. Pursuant to 309(e) of the Federal Water Pollution Control Act [hereinafter referred to as the Clean Water Act], 33 U.S.C. § 1319(e), the State of Tennessee was joined as a defendant. The State of Tennessee has moved for dismissal on the grounds that (1) 33 U.S.C. § 1319(e) is unconstitutional under the tenth amendment as interpreted by the Supreme Court in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); (2) the same section is unconstitutional under the due process clause of the fifth amendment; and (3) the United States fails to state a claim for which relief may be granted. This Court has jurisdiction pursuant to 28 U.S.C. § 1345 and 33 U.S.C. § 1319(b). For the reasons set out below, the State of Tennessee's motion to dismiss is denied.

### Environmental Legislation

Through comprehensive legislation Congress has asserted federal power over water pollution matters. The Federal Water Pollution Control Act Amendments of 1972 totally revised all previous water pollution control legislation. Conf.Rep.No.92–1236, 92d Cong., 2d Sess. 1, *reprinted in* [1972] U.S.Code Cong. & Ad.News 3668, 3776, 3777; Envir.Rep. (BNA), *Federal Laws* 71:5101 (1981) (editorial notation). The Act provides, among other things, for the fixing of effluent limitations and strengthening of enforcement mechanisms. Earlier legislation had been ineffectual in protecting the public from water pollution. Sen.Rep.No. 92–414, 92d Cong., 2d Sess. 5, *reprinted in*

[1972] U.S.Code Cong. & Ad.News 3688, 3672. Concern for the failure of the states to pursue water pollution matters pervades the legislative history. *See id.* at 3672, 3675–77, 3729–30. The 1972 amendments did not supplant the states' role in water pollution enforcement, but the federal administrator was given the power to enforce effluent limitations in the absence of state enforcement. *Id.* at 3729.

Although no portion of the legislative history addresses the section at issue specifically, the purpose of the section is clear from its own terms: a state may not legally impair the ability of its municipalities to comply with enforcement decrees under the Act. Section 309(e) of the Clean Water Act provides as follows:

> State liability for judgments and expenses. Whenever a municipality is a party to a civil action brought by the United States under this section, the State in which such municipality is located shall be joined as a party. Such State shall be liable for payment of any judgment, or any expenses incurred as a result of complying with any judgment, entered against the municipality in such action to the extent that the laws of that State prevent the municipality from raising revenues needed to comply with such judgment.

33 U.S.C. § 1319(e) (1976). When the United States moves to enforce water pollution legislation against a municipality, the state in which that municipality rests "shall be joined as a party." *Id.* To the extent that state law prevents a municipality from complying by raising revenue for any judgment rendered against it, liability rests with the state. The state is not a joint tortfeasor; it is not liable for any of the judgment unless state law prevents compliance. The state must fulfill any judgment that it keeps the city from satisfying.

Although the Clean Water Act of 1972 was modeled after the Clean Air Amendments of 1970, there is no similar state-lia-

---

1. Plaintiff alleges violations of section 7003 of the Resource Conservation and Recovery Act, 42 U.S.C. § 6973 (1976), and sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342 (1976).

bility provision in the Clean Air Amendments or any other provision of United States Code. Section 1319(e) of Title 33 has been challenged only once, and then no constitutional challenge was raised. *See United States v. City of Winston-Salem*, No. 75–557 (M.D.N.C. April 28, 1976). Insofar as the constitutionality of section 1319(e) is concerned, this is a case of first impression.[2]

### The Tenth Amendment

■ Defendant argues that section 1319(e) violates the tenth amendment.[3] In *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the Supreme Court held that congressional power over the commerce clause could not reach basic governmental services that are essential to the separate and independent existence of the states. At issue in *Usery* was the impact of the 1974 amendments to the Fair Labor Standards Act, which extended minimum wage requirements to state and local employees. Justice Rehnquist writing for the majority[4] said that state power to determine its employees' wages was an "undoubted attribute of state sovereignty." *Id.* at 845, 96 S.Ct. at 2471.

> Congress may not force directly upon the States its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made.

*Id.* at 855, 96 S.Ct. at 2476.

Justice Blackmun concurring in *Usery* read the majority opinion as adopting a balancing approach that would "not outlaw federal power in areas *such as environmental protection*, where the federal interest is demonstrably greater and where *state compliance with imposed federal standards would be essential.*" *Id.* at 856, 96 S.Ct. at 2476 (Blackmun, J., concurring) (emphasis added). Even if the rest of the majority disagreed with Justice Blackmun, his position coupled with the stance of the four dissenters[5] requires this Court to recognize that federal concerns predominate when Congress addresses environmental matters.

If the section of the Clean Water Act in question required sanctions against the state as a polluter, the Court's analysis would stop here. Defendant argues, however, that section 1319(e) interferes with the sovereignty of the state by altering the relationship between the state and its municipal corporations. As defendant reads section 1319(e), the state will be held liable without fault for the acts of its municipal corporations. This overstates the statute. The state will be held liable only to the extent that state law prevents the municipality from raising the revenues needed to comply with an adverse judgment. *See United States v. City of Winston-Salem, supra.* Thus, state interference with a municipality's ability to comply with a judgment under the Clean Water Act will not be tolerated.

State compliance with federal water pollution laws is essential for the uniform execution of the law. Section 1319(e) is a narrowly drawn provision that will not allow states to protect municipalities from enforcement of federal water pollution laws by restricting their ability to raise revenues.

Defendant argues that the significant financial impact on the state requires invalidation of section 1319(e). *Usery* does not allow state and local governments to avoid the strictures of environmental protection legislation, regardless of the financial impact. Environmental protection is not one

---

2. The Sixth Circuit upheld the Clean Water Act Amendments of 1972 against a blanket constitutional attack in *United States v. Ashland Oil & Transportation Co.*, 504 F.2d 1317, 1329 (6th Cir. 1974). *Usery* had not been decided at that time, and no specific complaint was raised against section 1319(e) of title 33. Therefore, this Court is compelled to examine those issues.

3. The tenth amendment provides that:

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

4. The Court split five to four with Justice Blackmun concurring separately with the majority.

5. *See* 426 U.S. at 880–81, 96 S.Ct. at 2488 (Stevens, J., dissenting).

of the integral governmental functions essential to the separate and independent existence of the states. *See* 426 U.S. at 845, 96 S.Ct. at 2471; *Northwestern Ohio Lung Ass'n v. Denton*, No. 77–654 (N.D.Ohio Nov. 19, 1980); *United States v. Plaquemines Parish Mosquito Control Dist.*, No. 78–3285 (E.D.La. Sept. 25, 1980).

Federal government's ability to seek injunctive relief against a state in the enforcement of environmental protection laws was resolved in this circuit in *United States v. Ohio Department of Highway Safety*, 635 F.2d 1195, (6th Cir. 1980). In that case the court was concerned with the amount of state expenditures that enforcement would require. Nonetheless, the court recognized that the federal interest in controlling air pollution outweighed any state interest in allowing polluting vehicles to travel public streets and highways.

Conceivably the state expenditure could be great in this case. Penalties of up to $10,000 per day could be rendered against the City of Waynesboro. If the State of Tennessee has limited Waynesboro's ability to raise revenues to comply with the judgment, then the State will be liable for the amount of that judgment. The provision, however, does not impose strict liability on the state.

### Due Process

Defendant claims that section 1319(e) violates its substantive due process rights. The State contends that the federal statute is arbitrary and capricious. This Court holds that justifiable congressional concern for national pollution control readily explains why the statute is neither arbitrary nor capricious.

Municipalities were one of the major sources of water pollution when the 1972 amendments were enacted. Water pollution from sewage facilities and garbage dumps, which are usually operated by municipalities, plagued the authorities under prior water pollution laws. Generally speaking, municipal spending and taxing authority may be controlled by the legislature in most states because the municipalities are creatures of the state. If a state enacted a law that prohibited a city from suffering the penalties under the Clean Water Act and if the state could not be joined as a party, then the civil penalties provisions would not deter cities from polluting the nation's waterways. Thus, the federal purpose was clear: to prevent municipal avoidance of federal water pollution laws.

Because no dispute is raised regarding congressional power to enjoin polluting parties, the state's argument boils down to whether civil penalties can be imposed against a municipality and, by virtue of a limiting state law, a state. In answer to that issue, this Court agrees with and quotes directly from Judge Young's opinion in *Northwestern Ohio Lung Association v. Denton, supra,* a case involving the propriety of civil penalties under the Clean Air Act.

This Court finds no logical distinction between the Government's attempt ... to require compliance (i. e. injunctive relief) and their attempt to impose civil penalties for violations of the [Clean Air] Act. The power to regulate air quality standards necessarily includes the power to impose sanctions for violations thereof. Since this Court has held that *National League of Cities* does not outlaw environmental law regulation of the state defendants, it follows that the same considerations would not prevent imposition of civil penalties.

### Failure to State a Claim

Defendant also contends that because plaintiff has failed to cite any state law which would limit Waynesboro's ability to pay a judgment rendered against it, a claim for relief cannot be granted against the state. The only issue presently before the Court is whether defendant is properly joined. Defendant's attacks on section 1319(e) have necessarily required this Court to examine the second clause of the section to ascertain Congress' purpose for requiring joinder. The issue of whether state law limits a municipality's ability to pay, how-

ever, is not presently before the Court. When and if a judgment is rendered against defendant City of Waynesboro, plaintiff's ability to proceed on that judgment against the state will be determined. Until then, defendant's motion for failure to state a claim on this issue will be denied. Defendant, State of Tennessee, will be free to renew its motion upon the entry of any judgment against the City of Waynesboro.